IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEDAMERICA, INC., | No. C-09-03567 JSW (EDL) |
| Plaintiff, | **REPORT AND RECOMMENDATION RE: PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT** |
| v. | |
| MEDAMERICA ASSOCIATION, | |
| Defendant. | |

On August 5, 2009, Plaintiff MedAmerica, Inc. filed this action against Defendant MedAmerica Association, alleging federal law claims for service mark infringement and false designation of origin under the Lanham Act, 15 U.S.C. §§ 1114, 1125(a), and state law claims for service mark dilution (Cal. Bus. & Prof. Code § 14330), trade name infringement (Cal. Bus. & Prof. Code § 14402) and common law unfair competition. After entry of default on October 5, 2009, Plaintiff filed a motion for entry of default judgment, which was referred to the undersigned Magistrate Judge pursuant to Civil Local Rule 72-1. This Court held a hearing on February 9, 2010, at which attorney Darl Danford appeared for Plaintiff. Defendant did not file an opposition to Plaintiff's Motion, and did not appear at the hearing. Following the hearing, on February 10, 2010, Plaintiff's counsel filed: (1) a supplemental declaration of counsel attesting to the number of hours spent by counsel in prosecuting this case; (2) a supplemental brief addressing Michigan law regarding claims against a dissolved corporation and the scope of the proposed injunctive relief in this case; and (3) an amended proposed default judgment. For the reasons stated at the hearing and in this Report and Recommendation, the Court recommends granting Plaintiff's Motion for Default

Judgment.

**Background**

Plaintiff was founded in 1975 and, since that time, has continuously maintained its principal place of business in Alameda County, California. See Declaration of Michael Harrington ¶ 2. Plaintiff partners with physicians and hospitals to offer a comprehensive array of business management consultant services in the medical field. See id. ¶ 3.

Plaintiff is the owner of two service mark registrations for the mark, "MedAmerica." See Harrington Decl. ¶¶ 7-9; Ex. A, B. Both registrations are valid, incontestable, subsisting, un-cancelled and unrevoked. See id. Since 1979, Plaintiff has continuously used its registered service mark throughout the United States in connection with its business services. See id. ¶ 4. Plaintiff has a team of employees dedicated to marketing its brand by creating, publishing and maintaining an Internet website, attending tradeshows, and preparing and distributing newsletters and other printed materials. See id. ¶ 5.

Defendant MedAmerica Association is a Michigan corporation that was incorporated in 2002 and dissolved on May 7, 2009.[1] See Declaration of L. Daniel Pearl ¶ 2; Ex. K. Defendant invites doctors, dentists, pharmacies, chiropractors and other health care related service providers to participate in its programs providing discounted rates and pricing to its members in connection with health care services and medications. See id. ¶ 10. Defendant uses its Internet websites to solicit

---

[1] A corporation's capacity to be sued is determined by the law of the state in which the corporation was organized. See Fed. R. Civ. P. 17(b)(2). Under Michigan law, a dissolved corporation can sue and be sued. See Mich. Comp. Laws § 450.1834 (1993). However, a dissolved corporation may take steps to bar future claims from existing or potential claimants. See Freeman v. Hi-Temp Prods., 580 N.W. 2d 918, 921 (Mich. App. 1998). A dissolved corporation may give written notice to existing claimants that must include, among other things, a deadline of no more than six months by which the dissolved corporation must receive the claim. See Mich. Comp. Laws § 450.1841a(1)(c). An existing claim means any claim against the corporation, but does not mean a contingent liability or a claim based on an event occurring after the effective date of the dissolution. See Mich. Comp. Laws § 450.1841a(4). Here, Plaintiff has an existing claim based on Plaintiff's cease and desist letters to Defendant that were made before Defendant's dissolution. Plaintiff did not receive any written notice pursuant to section 450.1841a(1)(c). See Supp. Danford Decl. ¶ 3. Therefore, Plaintiff's claim is not barred by Michigan Compiled Laws section 450.1841a(1)(c).

A dissolved corporation may also publish notice in a newspaper of general circulation stating that a claim is barred against it if not commenced within one year of the publication date. See Mich. Comp. Laws § 450.1842a. There is no evidence of whether Defendant made this publication, but even if it did, Plaintiff's claim is timely because this action was filed within one year of the dissolution.

clients to pay a fee for the right to obtain lists of participating medical service providers and to obtain discounted rates and services. See id. ¶ 11. Defendant represents that it has contractual relationships with California emergency room medicine physicians, which are located within a twenty-five mile radius of Plaintiff's principal place of business in Emeryville, California. See id. ¶ 13.

In December 2008, Plaintiff's counsel became aware that Defendant was using Internet websites that contained the service mark, "MedAmerica." See Declaration of Darl Danford ¶¶ 2-3. Defendant utilized the following Uniform Resource Locators: www.medshareprogam.com, www.1188dental.com, and www.worldshoprx.com. See id. ¶¶ 3-4; Ex. C, D, E.

On December 24, 2008 and January 26, 2009, Plaintiff sent cease and desist letters to Defendant. See Danford Decl. ¶¶ 8-9; Ex. F, G. Despite Plaintiff's letters, Defendant continued to use the "MedAmerica" mark. See Pearl Decl. ¶ 4 (stating that Defendant's Chief Executive Officer, Robert Wasik, told Plaintiff's counsel on October 28, 2009 that Defendant continues to use the name and mark "MedAmerica"). An Internet search on November 12, 2009 revealed that Defendant has removed the name and mark "MedAmerica" from its website pages, but Internet searches using the term "MedAmerica" directed the searching party to Defendant's website, www.1188dental.com. See Danford Decl. ¶ 11; Ex. I.

**Discussion**

Federal Rule of Civil Procedure 55(b)(2) authorizes the Court to enter judgment against a defendant against whom a default has been entered, assuming that defendant is not an infant, is not incompetent or in military service. Defendant here is a corporation and therefore not an unrepresented minor, incompetent or in military service. See Pearl Decl. ¶ 2; Ex. K.

"The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." Geddes v. United Financial Group, 559 F.2d 557, 560 (9th Cir. 1977) (citing Pope v. United States, 323 U.S. 1, 12 (1944)). In exercising its discretion to grant default judgment, the court may consider the following factors: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a

3

1  dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the
2  strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. See
3  Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Generally, upon entry of default, the
4  factual allegations of the complaint are taken as true, except for those relating to damages. See
5  Televideo Systems, Inc. v. Heidenthal, 826 F.2d 915, 917 (9th Cir. 1987).

6      Here, the Eitel factors weigh in favor of default judgment. Most importantly, the substantive
7  claim at issue appears to have merit and the complaint is sufficient to state that claim.[2] To prevail
8  on a service mark infringement claim, a plaintiff must prove the existence of a valid service mark
9  and the subsequent use of that mark by another in a manner likely to create consumer confusion.
10 See 15 U.S.C. § 1114; Surfvivor Media, Inc. v. Survivor Productions, 406 F.3d 625, 630 (9th Cir.
11 2005).

12     Registration of a mark on the principal register in the Patent and Trademark Office is prima
13 facie evidence of the validity of the mark. See id.; 15 U.S.C. § 1115(a) (stating that registration of a
14 mark "on the principal register provided by this chapter and owned by a party to an action shall be
15 admissible in evidence and shall be prima facie evidence of the validity of the registered mark and of
16 the registration of the mark, of the registrant's ownership of the mark, and of the registrant's
17 exclusive right to use the registered mark in commerce. . . ."). In its complaint and through
18 declarations, Plaintiff has met the first prong of the test for service mark infringement by showing
19 that it owns a registered service mark. See Compl. at ¶¶ 12-13; Ex. A-B; Harrington Decl. ¶¶ 7-9.

20     The Ninth Circuit considers eight factors to assess the likelihood of confusion: (1) strength
21 of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion;
22 (5) marketing channels used; (6) type of goods and degree of care likely to be used by the purchaser;
23 (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines.
24 AMF Inc. v. Sleekcraft Boats, 599 F.2d 341, 348-49 (9th Cir. 1979), abrogated in part on other
25 grounds by Mattel, Inc. v. Walking Mountain Prods., 353 F.3d 792, 810 n. 19 (9th Cir.2003). In an

---

[2] Plaintiff's complaint includes claims for: (1) service mark infringement under the Lanham Act; (2) false destination of origin under the Lanham Act; (3) dilution of service mark under California law; (4) trade name infringement under California law; and (5) common law unfair competition. Plaintiff's Motion for Default Judgment, however, relies only on the federal service mark infringement claim.

4

1  Internet case, "the three most important Sleekcraft factors in evaluating a likelihood of confusion are
2  (1) the similarity of the marks, (2) the relatedness of the goods or services, and (3) the parties'
3  simultaneous use of the Web as a marketing channel." Interstellar Starship Servs. v. Epix, Inc., 304
4  F.3d 936, 942 (9th Cir. 2002) ("When this 'controlling troika,' or internet trinity, 'suggests
5  confusion is ... likely,' the other factors must 'weigh strongly' against a likelihood of confusion to
6  avoid the finding of infringement. If the internet trinity does not clearly indicate a likelihood of
7  consumer confusion, a district court can conclude the infringement analysis only by balancing all the
8  Sleekcraft factors within the unique context of each case.") (internal citations omitted); see also
9  Internet Specialities West, Inc. v. Milon-Digiorgio Enterprises, Inc., 559 F.3d 985, 989 (9th Cir.
10 2009) (approving Intersteller Starship). In addition, "[w]hen the alleged infringer knowingly adopts
11 a mark similar to another's, [a court] must presume that the public will be deceived." M2 Software,
12 Inc. v. Madacy Entm't, 421 F.3d 1073, 1085 (9th Cir. 2005). Further, where, as here, the services at
13 issue are "related or complementary," the likelihood of confusion is heightened. M2 Software, 421
14 F.3d at 1082.

15     In its complaint, Plaintiff has sufficiently alleged the likelihood of confusion pursuant to the
16 Intersteller Starship factors. Here, the marks are not only similar, they are identical, down to the
17 capital "A" used in the middle. See Harrington Decl. ¶ 15. The parties are also engaged in related
18 services in the medical and health care fields. Plaintiffs alleges that it is "a nationally recognized
19 company, which partners with physicians and hospitals to offer a comprehensive menu of business
20 management consultant services in the medical field." Compl. ¶ 8. Similarly, Defendant offers
21 services such as "soliciting doctors, dentists, pharmacies, chiropractors, and other health care related
22 service providers throughout the United States, including California, to participate in its various
23 programs which provide discounted rates and pricing to its members in connection with health care
24 services and medications." Harrington Decl. ¶ 10. Further, many of the emergency medicine
25 specialists indicated as clients on Defendant's website are located within twenty-five miles of
26 Plaintiff's principal place of business. See Danford Decl. ¶ 10. Defendant's solicitation of
27 emergency medicine doctors and patients in Alameda County with the use of the MedAmerica mark
28 is likely to cause confusion because Plaintiff's largest customer is California Emergency Physicians

**United States District Court**
For the Northern District of California

5

1  Medical Group which is a large partnership of emergency medicine doctors which has its principal
2  place of business in Alameda County.  <u>See</u> Harrington Decl. ¶ 14.  Finally, Defendant uses the same
3  Internet marketing channels of trade as Plaintiff.  <u>See</u> Compl. ¶ 14; Harrington Decl. ¶¶ 5, 11.

4        The additional <u>Sleekcraft</u> factors also generally support a likelihood of confusion.  Plaintiff
5  alleges the strength of its service mark that has "for over thirty years been relied upon and . . . come
6  to be known and identified by the trade and the public for the purpose of identifying and
7  distinguishing Plaintiff's company and services from those of other companies.  Its name and mark
8  'MedAmerica' is nationally prominent and has acquired great value and is identified with Plaintiff."
9  Compl. ¶ 11.  Plaintiff alleges that "Defendant's use of the designation 'MedAmerica Association'
10 in connection with Defendant's business or services is likely to cause mistake, confusion or
11 deception in the minds of the public and has resulted in actual confusion."  Compl. ¶ 15.  Although
12 there is no evidence of actual confusion, the marks are identical.  Plaintiff has not made any
13 allegations regarding expansion of product lines and the care exercised by purchasers in selecting
14 services, but even if these factors weighed against finding a likelihood of confusion, they are
15 substantially outweighed by the strong showing of the <u>Interstellar Starship</u> factors.

16       The remaining <u>Eitel</u> factors weigh in favor of granting default judgment.  First, if the motion
17 were denied, Plaintiff would be prejudiced because it would likely be without a remedy.  <u>See</u>
18 <u>Pepsico, Inc. v. Cal. Sec. Cans</u>, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("If Plaintiffs' motion
19 for default judgment is not granted, Plaintiffs will likely be without other recourse for recovery.").
20 Second, Plaintiff does not seek monetary damages.  Instead, Plaintiff seeks injunctive relief and an
21 award of fees and costs, which is not disproportionate or unreasonable given the extent of
22 Defendant's infringement.  Finally, because Defendant did not file an answer to the complaint, there
23 is little to suggest that there is a possibility of a dispute concerning material facts.  Nor is it likely
24 that Defendant's default was due to excusable neglect, since Plaintiff's counsel has been in contact
25 with Defendant's Chief Executive Officer, who presumably is aware of this litigation.

26       Accordingly, the Court recommends that Plaintiff's motion for default judgment be granted.

27 **Injunctive relief**

28       Although Plaintiff's complaint seeks monetary damages, Plaintiff requests only injunctive

1  relief and attorneys' fees and costs through this motion. The Lanham Act provides authority for the
2  Court to issue an injunction. See 15 U.S.C. § 1116(a); Century 21 Real Estate Corp. v. Sandlin, 846
3  F.2d 1175, 1180-81 (9th Cir. 1988) ("Injunctive relief is the remedy of choice for trademark and
4  unfair competition cases, since there is no adequate remedy at law for the injury caused by a
5  defendant's continuing infringement."). Further, injunctive relief is available as part of a default
6  judgment. See Philip Morris USA, Inc. v. Castworld Prods., Inc., 219 F.R.D. 494, 502 (C.D. Cal.
7  2003). In a service mark infringement case, once the plaintiff establishes a likelihood of confusion,
8  it is ordinarily presumed that the plaintiff will suffer irreparable harm if injunctive relief is not
9  granted. See, e.g., Rodeo Collection, Ltd. v. West Seventh, 812 F.2d 1215, 1220 (9th Cir.1987).

10  Here, Plaintiff alleges that unless Defendant's conduct is enjoined,

> Defendant's activities will inevitably continue to cause confusion, mistake and deception and will irreparably injure and damage Plaintiff in that the trade and public will erroneously believe that the services and/or businesses of Plaintiff and Defendant have a common origin, or that Defendant's services and/or business marketed under the confusingly similar name "MedAmerica Association" is designed, sold, provided, sponsored and/or serviced by Plaintiff, or are being placed on the market with the consent, authority and/or approval of Plaintiff or under Plaintiff's sponsorship, or that Plaintiff has licensed or approved Defendant's use of the designation "MedAmerica Association," or that Plaintiff's and Defendant's businesses are in some way connected or associated, by reason of which Plaintiff's reputation and goodwill have been and will be subjected to the hazards and perils attendant upon Defendant's business activities, reputation and the quality of their services over which Plaintiff has no control whatsoever.

18  Compl. ¶ 19; see also Compl. ¶¶ 23, 26, 30, 33. Further, Plaintiff's Chief Executive Officer asserts
19  that Defendant's "active solicitation of emergency medicine doctors and patients in Alameda
20  County, coupled with its infringing use of the mark 'MedAmerica,' is very likely to cause actual
21  confusion within the marketplace because Plaintiff's largest customer is California Emergency
22  Physician Medical Group which is a very large partnership of emergency medicine doctors which
23  has its principal place of business in Alameda County." Harrington Decl. ¶ 14. Finally, Mr.
24  Harrington states that Defendant's "infringing use of the mark 'MedAmerica' is likely to cause
25  actual confusion in the marketplace because Defendant MedAmerica Association's infringement
26  included its publication of the mark 'MedAmerica' on the Internet without variation, including use
27  of the capital letter 'A' in the middle of the name." Id. ¶ 15.
28  Therefore, the Court recommends that Defendant be permanently enjoined from further

7

infringement of Plaintiff's service mark. At the hearing, the Court questioned whether certain paragraphs of Plaintiff's proposed injunction were appropriate. Accordingly, following the hearing, Plaintiff submitted an amended proposed injunction.

Federal Rule of Civil Procedure 65(d) requires that the acts to be enjoined be described in reasonable detail and provides that an injunction is binding not only on a party, but also on the "parties' officers, agents, servants, employees and attorneys; and other persons who are in active concert or participation with" them. Accordingly, because Defendant has been dissolved, the Court recommends that the injunction extend not only to Defendant's officers, agents, and employees, but also to its successors and assigns to prevent all those who are currently operating Defendant's business from avoiding the Court's injunction. See Walling v. James V. Reuter, Inc., 321 U.S. 671, 673-74 (1944) ("Not only is such an injunction enforceable by contempt proceedings against the corporation, its agents and officers and those individuals associated with it in the conduct of its business, but it may also, in appropriate circumstances, be enforced against those to whom the business may have been transferred, whether as a means of evading the judgment or for other reasons. The vitality of the judgment in such a case survives the dissolution of the corporate defendant.") (internal citations omitted).

**Attorneys' fees**

Attorneys' fees may be awarded to the prevailing party under the Lanham Act in exceptional cases. See 15 U.S.C. § 1117(a). Exceptional circumstances can be found where the defendant is found to have acted maliciously, fraudulently, deliberately or willfully. See Earthquake Sound Corp. v. Bumper Indus., 352 F.3d 1201, 1216 (9th Cir. 2003); see also Classic Media, Inc. v. Mewborn, 532 F.3d 978, 990 (9th Cir. 2008) ("Exceptional circumstances can be found when the non-prevailing party's case is groundless, unreasonable, vexatious, or pursued in bad faith.").

In Earthquake Sound, the defendant filed an application to publish its "Carquake" mark, knowing of the existence of the similar "Earthquake" mark. See id. at 1217. The defendant informed one distributor that its products were the same as, but cheaper than, the plaintiff's competing products. See id. The defendant used product identification codes similar to those used by Plaintiff. See id. at 1218. The record contained evidence of actual confusion. See id. When the

8

plaintiff informed the defendant of the possible infringement, the defendant did not take any reasonable measures to investigate, and subsequently refused to settle and persisted in marketing the Carquake line of products. See id. The court determined that Defendant engaged in deliberate and willful infringement and affirmed the award of attorneys' fees. See id. ("Bumper utilized a mark that was similar to that of its competitor, was informed of actual confusion, and deliberately chose not to make a reasonable effort to ascertain whether it might actually be infringing. Bumper persisted despite further attempts by Earthquake to inform Bumper of consumer confusion. And, as far as the properly submitted facts of this case indicate, Bumper agreed to cease using the 'Carquake' mark and then reneged on that agreement.").

The course of infringing conduct is sufficiently similar to that in Earthquake Sound to establish willfulness. Although there is no evidence of actual consumer confusion, the mark used by Defendant is exactly the same, down to the capital letter "A" in the middle, as that used by Plaintiff. Most egregiously, Defendant continued to use Plaintiff's mark for several months even after receiving two cease and desists letters, and even after this case was filed. See Danford Decl. ¶¶ 8-11; Pearl Decl. ¶ 4. On the whole, Defendant's conduct demonstrates willful infringement sufficient to establish the exceptional nature of this case for purposes of awarding fees.

Plaintiff's counsel spent 66 hours and incurred $21,107.00 in fees in investigating and prosecuting this matter. See Danford Decl. ¶¶ 13-14; Ex. J; Supp. Danford Decl. ¶¶ 5-6. Attorney Richard Circuit's hourly rate is $395.00, attorney Darl Danford's hourly rate is $335.00, attorney Daniel Pearl's hourly rate is $290.00 and attorney Nathan Karlsgodt's hourly rate is $175.00. See Danford Decl. ¶ 14. The Court finds that the hourly rates and the number of hours spent are reasonable, and that there was no improper billing.

Therefore, the Court recommends a fee award of $21,107.00.

**Conclusion**

The Court recommends granting Plaintiff's motion for default judgment for fees in the amount of $21,107.00 and entering the following permanent injunction:

1. That Defendant, its agents, servants, employees, attorneys, successors and assigns, and all those acting under the authority of or in privity with Defendant, and each and all of them, are permanently enjoined from directly or indirectly:

9

      a.    Using in any manner in connection with the advertising, promotion, distribution, offering or marketing of services, the trade names, trademarks or service marks "MedAmerica Association," or any other variation or colorable imitation of Plaintiff's trade name, trademark or service mark "MedAmerica;" and

      b.    Engaging in advertising, promotion, distribution, offering or marketing services using the trade names, trademarks or service marks "MedAmerica Association" or any other variation or colorable imitation of "MedAmerica."

2.    That Defendant is required to deliver up for destruction all business materials, advertising, and promotional materials, stationery, or other materials in its possession or under its control which bear or contain any designation consisting of or comprising the service mark and trade names "MedAmerica Association" or any variation or colorable imitation of Plaintiff's service mark "MedAmerica." These materials shall be delivered to Plaintiff's counsel, Darl R. Danford, Esq.; Circuit, McKellogg, Kinney & Ross LLP; 1205 Prospect Street; La Jolla, California 92307, within thirty (30) days after service of this Default Judgment on Defendant.

3.    That Defendant is required to remove its URL listings that include the mark "MedAmerica" from the Internet.

Any party may serve and file specific written objections to this recommendation within ten (10) working days after being served with a copy. <u>See</u> 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); Civil Local Rule 72-3. Failure to file objections within the specified time may waive the right to appeal the District Court's order.

Dated: February 11, 2010

                                         */s/ Elizabeth D. Laporte*
                                       ELIZABETH D. LAPORTE
                                       United States Magistrate Judge